Lindsey Wagner (CBN 309808)
Attorney-at-Law
Scott Wagner & Associates, P.A.
3900 W Alameda Ave St. 1200
Burbank, CA 91505
Telephone: (213) 377-5200
Facsimile: (561)653-0020

Attorneys for Plaintiff CHANDLER J. WIBLE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHANDLER WIBLE, an individual, individually and on behalf of himself and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIHOME MORTGAGE COMPANY, LLC a foreign corporation,<br><br>Defendant. | **AMENDED COMPLAINT AND DEMAND FOR JURY**<br><br>**CASE NO. 18-8502 DSF (PJWx)** |

Plaintiff, CHANDLER J. WIBLE ("Plaintiff WIBLE or "Plaintiff") alleges as following against Defendant AMERIHOME MORTGAGE COMPANY, LLC (collectively "AMERIHOME").

## NATURE OF THE ACTION

1. By this action, Plaintiff WIBLE is seeking damages and injunctive relief pursuant to the claims alleged in this Amended Complaint.

## JURISDICTION AND VENUE

2. Plaintiff brings his complaint under federal diversity jurisdiction 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and amount in controversy exceeds $75,000. He also brings his complaint upon a federal question (Fair Labor Standards Act). Jurisdiction is proper in California federal courts under California's long-arm statute. This Court also has supplemental jurisdiction over the state law claims.

3. Venue is proper as the substantial part of the events or omissions giving rise to the claim occurred within this district.

4. Venue is also proper as the parties were subject to an Employment Agreement providing that California is the proper jurisdiction for claims governing Mr. Wible's employment (See Exhibit A)[1].

## THE PARTIES

5. Plaintiff WIBLE, is an individual, residing in the County of Grayson, Texas, intending to remain in TEXAS, and previously was a resident in California.

6. Defendant AMERIHOME is foreign corporation of Delaware doing business in the County of Los Angeles, California.

7. Upon information and belief, the Members of AMERIHOME are as follows:
   a. James Furash, who, upon information and belief, is a resident of/domiciled within of the County of Los Angeles, California.

---

[1] Mr. Wible is not in possession of an executed copy of the Agreement, but upon information and belief, the Defendant is in possession of the executed copy, which was executed by both parties.

b. Jerry Hager, who, upon information and belief, is a resident of/domiciled within the County of Los Angeles, California.

## GENERAL ALLEGATIONS

8. Defendant AMERIHOME is a company that provides loans and loan servicing.

9. Plaintiff WIBLE joined AMERIHOME on or about August 1, 2016, with extensive background and experience as a non-conforming consumer loan underwriter (as well as GSE loans).

10. Prior to joining AMERIHOME, Plaintiff Wible was employed in the position of Corporate Underwriter with Bank of America (BOA) - the largest mortgage company in the world.

11. At BOA, Plaintiff WIBLE worked his way up from Senior Underwriter to Corporate Underwriter, with increasing leadership responsibilities and commiserate titles.

12. It was at the height of Plaintiff WIBLE's career with BOA that he learned of the position with AMERIHOME.

13. As indicated in the online job advertisement, the position with AMERIHOME was to be a position of Underwriter.

14. Plaintiff WIBLE applied and was interviewed for the position.

15. Plaintiff was hesitant about taking the position as it would require him to relocate out of state from California and to Texas, to leave his promising position with BOA, and to take a pay cut.

16. However, it was the promise by Rekha Siddani during the interview that swayed Plaintiff WIBLE to accept the position, including the representations about the kind of work involved.

17. Prior to the interview, but after submitting an application, Mr. Wible was contacted by Rekha Siddani, Senior Underwriting Manager with Defendant and located in Woodland Hills, California, on July 5, 2016, who let him know that he was selected to proceed with the next step with the application process – an assessment. If he passed the onsite assessment, he would be contacted for a follow-up interview.

18. Mr. Wible passed the online assessment.

- 3 -
COMPLAINT

19. In fact, Mr. Wible was later told that he got one of, if not the, highest score on the online assessment that his supervisor, Mr. Lloyd Thomas, had seen.

20. Subsequently, Mr. Wible was invited to an Interview with Defendant by phone with Ms. Siddani and Adrian Kovacs to take place on July 7, 2016.

21. During the interview, Ms. Siddani represented to Plaintiff WIBLE that the position was a management position.

22. Ms. Siddani represented that if Plaintiff WIBLE took the position, he would not stay in that position long, but instead, Plaintiff would be placed into management of the Texas office within a month or two of hire and/or the first available management opportunity.

23. Ms. Siddani told Plaintiff WIBLE that they were looking for someone to lead the office and his experience was exactly what they needed. They were going in the direction of non-conforming loans, his background and he would be working in non-conforming loans.

24. Ms. Siddani told Plaintiff WIBLE that he would be the first underwriter in the office and that Plaintiff would be training the new employees as they came on board, Plaintiff would be in management.

25. On July 11, 2016, Wible was offered a position by Sara Khatchatourian at the Defendant's Woodland Hills, California location to begin August 1, 2016, in the Dallas, Texas office.

26. With this representation of the position, Plaintiff WIBLE accepted the offer of employment on July 20, 2016, to begin work in the Texas office on August 1, 2016.

27. Plaintiff WIBLE put in his resignation at BOA and relocated to Texas for the position with AMERIHOME, with the assistance of AMERIHOME, who helped to coordinate his travel and a rental vehicle for his arrival.

28. Just after getting settled into the position in the Dallas, Texas office, Plaintiff WIBLE was shocked to be introduced to Lloyd Thomas, who introduced himself as the new office manager – the position Plaintiff WIBLE was promised and relocated to have.

29. Moreover, unlike Plaintiff WIBLE, who had non-conforming loan experience, Mr. Thomas had none.

30. Plaintiff WIBLE brought these concerns to his supervisor Ms. Siddani, telling her, "I'm concerned, why is this person introducing themselves as the manager? This was why I moved here for the position?"

31. After Plaintiff expressed his concerns, which was just over one month into his employment with Defendant, the relationship drastically changed.

32. Previously, and upon beginning employment with the company, Mr. Wible was put into a training program with Mr. Kovac, who would later become the Defendant's Senior Vice President for Quality Control.

33. During Mr. Kovac's training, Mr. Wible passed 10 test cases without issue.

34. Mr. Kovac told Mr. Wible he was a "great underwriter."

35. However, just two weeks later, after Mr. Wible was placed into his position and complained about the kind of work not being as represented, he was told that he was not performing.

36. Plaintiff WIBLE was audited without reason and accused of making mistakes.

37. Plaintiff WIBLE was fearful that he was being pushed out of his employment. In an effort to be a team player and "roll with the punches," Plaintiff asked for re-training on or about October 4, 2016, but also made sure that the company knew that he knew his rights under the law. He hoped they would reconsider their position and place him into the position he was told he would receive before he relocated from California.

38. Plaintiff WIBLE told his manager, Mr. Lloyd Thomas (the person who took the position Plaintiff was promised), that he was going to discuss his concerns about a California Labor Code 970 claim with an attorney and asked the company to reconsider their decision to not place him into the manager position he was told he would receive.

39. Mr. Thomas responded to Mr. Wible that he would need to discuss this legal issue with the Defendant's Legal Department/upper management.

40. Two days later, on October 4, 2016, Plaintiff WIBLE was contacted by Ms. Siddani and Human Resources by phone to inform him that he was being laid off in lieu of training him, as he requested.

41. Defendant represented that the layoff was a "mutual decision"

42. Immediately, in response, Mr. Wible corrected that he did not want to be laid off or terminated.

43. During subsequent conversations with Human Resources, Plaintiff WIBLE was assured by Shelley Tam that he would only receive a neutral reference from the company, which would include his dates of employment and position only.

44. Plaintiff WIBLE was further assured his reference would only state that Plaintiff separated by mutual agreement and there would be no reference to his eligibility for reemployment or rehire.

45. However, in 2018, Plaintiff WIBLE learned that the Defendant did not adhere to this agreement.

46. Instead, Plaintiff WIBLE learned from a potential employer that AMERIHOME was providing additional information to potential employers, including that Plaintiff was not eligible for rehire.

47. As a result, Plaintiff was left with financial hardship from relocation, no job, and no employment prospects.

48. Desperate, he reached out again to Defendant to reconsider his employment, to no avail.

49. Such actions constitute a breach of the parties' agreement and are retaliatory.

**PAY CLAIMS**

50. During employment, Mr. Wible worked in a non-exempt position, entitling him to overtime pay under California state and federal law.

51. During employment, Mr. Wible regularly worked in excess of 40 hours in a week, but was not compensated at a rate of time and a half for his pay.

52. Similarly, and during employment, Mr. Wible regularly worked in excess of 8 hours in a day, but was not compensated at a rate of time and a half for his pay, consistent with California law per his Employment Agreement.

53. Instead, Mr. Wible was told by Rehka Siddani, Vice President, Underwriting Manager, "we don't pay daily overtime; this isn't California."

54. As such, Mr. Wible and his coworkers were forced to work "off the clock" time in which they were not properly compensated.

55. Upon information and belief, Defendant suffered and permitted Plaintiff to work overtime without appropriate overtime compensation.

## FIRST CAUSE OF ACTION

### (VIOLATION OF LABOR CODE §970 et. seq.)

56. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

57. As alleged herein, Defendant made representations about WIBLE's kind of work, availability of work, compensation of work, and length of time of work.

58. As a result of their false representations, Defendant directly and/or indirectly influenced, persuaded, and engaged WIBLE to change from one place within the State of California to another place inside the State of Texas and otherwise to leave his employment with Bank of America in favor of the job which was not as promised.

59. By the acts and omissions of Defendant, WIBLE has been directly and legally caused to suffer actual damages, including but not limited to loss of earnings, reliance damages, cost of suit, and other pecuniary loss in an amount not presently ascertained, but to be determined at trial.

60. As a further direct and legal result of the acts and conduct of Defendant, WIBLE has been caused to suffer and did suffer extreme emotional distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. WIBLE does not know at this time the exact duration of permanence of said injuries, but is informed and believes and thereon alleges that some if not all of the injuries are reasonably permanent in character.

61. WIBLE has been generally damaged in an amount within jurisdictional limits of this Court.

62. WIBLE is informed and believes and hereon alleges that Defendant, by engaging in the aforementioned conduct in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive, and despicable conduct, and acted with willful and conscious disregard of

Lindsey Wagner
Attorney-at-Law
3900 W. Alameda Ave, Suite 1200
Burbank, CA 91505
Telephone: (213) 3775200
Facsimile: (561) 653-0020

rights, safety, and welfare of WIBLE, thereby justifying an award of punitive damages to be determined at trial.

63. Pursuant to Section 972 of the California Labor Code, WIBLE is entitled to double damages.

## SECOND CAUSE OF ACTION

WHISTLEBLOWER RETALIATION LABOR CODE 1102.5

37. WIBLE realleges and incorporates by reference Paragraphs herein.

38. This cause of action arises under California Labor Code section 1102.5(a): An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

39. California Labor Code 1102.5 (d) provides: An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

40. Prior to accepting the position with Defendant, Defendant and/or Defendant's agents represented to Mr. Wible that:

   a. Plaintiff would be moved into "management" at the first available opportunity;
   b. If WIBLE took the position, he would not stay in that position long, but instead, Plaintiff would be placed into management of the Texas office within the first available opportunity;

     c. Defendant was looking for someone to lead the office and his experience was exactly what they needed. They were going in the direction of non-conforming loans, his background.

     d. That WIBLE would be the first underwriter in the office, and

     e. That Plaintiff would be training the new employees as they came on board.

41. When Plaintiff relocated from California to Texas for the position and assumed the role, he learned that the representations made to him to induce him to accept the position were false.

42. Such actions are a violation of California Labor Code 970 and/or Plaintiff had reasonable cause to believe that the actions were a violation of California Labor Code 970.

43. Two days after Plaintiff's complaint, he was terminated.

44. In subjecting plaintiff to the misconduct described above and in other respects presently unknown to plaintiff, defendant willfully, knowingly and intentionally retaliated against plaintiff for disclosing to a person with authority over plaintiff for disclosing, what he had reasonable cause to believe, was a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

45. Following Plaintiff's termination, he was further retaliated against when Defendant breached agreements to not provide him a reference to his eligibility for reemployment or rehire.

46. As a result of Defendant's retaliation against plaintiff, there is due and owing to plaintiff monies and damages under the terms of that act.

47. As a result of defendant's retaliatory conduct, plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, and other employment benefits, and has incurred attorney's fees, all to his damage in excess of the minimum jurisdiction of this court, the precise amount to be proved at the time of trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

48. As a further result of the aforementioned wrongful conduct of defendant, plaintiff suffered anxiety, humiliation, mental anguish, embarrassment, worry, sleeplessness, mental and emotional distress, loss of reputation, and other incidental damages and out-of-pocket expenses, all

to plaintiff's general damage in excess of the minimum jurisdiction of this court, with the precise amount to be proved at the time of trial.

49. Defendant's conduct described herein was despicable, was intended by defendant to cause injury to the plaintiff, was carried on by defendant with a conscious disregard of the rights of plaintiff, subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention to deprive plaintiff of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code, Section 3294, thereby entitling plaintiff to punitive damages against the defendant in an amount appropriate to punish or to set an example of such defendant.

## THIRD CAUSE OF ACTION

**UNLAWFUL FAILURE TO PAY OVERTIME WAGES UNDER CALIFORNIA LAW
(California IWC Wage Order 4; Cal. Labor Code §§ 510, 1194, 1198)**

50. Plaintiff incorporates by reference in this cause of action each allegation of the preceding paragraphs, as though fully set forth herein.

51. Plaintiff worked under a contract, which provided that his employment would be subject to California law (See Exhibit A).

52. At all relevant times herein, California Labor Code § 510 and IWC Wage Order No. 4 requires employer, like Defendant, to pay non-exempt employees overtime premium(s) for hours worked in excess of 8 (or in excess of 12) in a given workday, 40 in a given workweek, or on the seventh day worked in a single workweek. Pursuant to California Labor Code § 1198, it is unlawful to employ persons for hours longer than the hours set by the Industrial Welfare Commission ("IWC"), or under conditions prohibited by the applicable wage orders of the IWC.

53. Plaintiff was non-exempt and entitled to be paid overtime compensation for all overtime hours worked.

54. Plaintiff is informed and believe, and thereon alleges, that he worked in excess of eight hours per day and in excess of 40 hours per week, and Defendant unlawfully failed to pay

Plaintiff proper overtime compensation required in violation of IWC Wage Order 4, and the California Labor Code §§ 510 and 1198, throughout Plaintiff's employment. Pursuant to California Labor Code § 1194, the Plaintiff is entitled to recover his unpaid overtime compensation.

55. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendant in an amount to be established at trial, plus interest, attorneys' fees and costs.

50. Defendant's failure to pay overtime was done willfully, in bad faith, in knowing violation of the California Labor Code and the IWC Wage Order, and with malice.

## FOURTH CAUSE OF ACTION

### LATE PAY AND WAITING TIME PENALTIES
### (Cal. Labor Code §§ 200-203)

51. Plaintiff incorporates by reference in this cause of action each allegation of the preceding paragraphs as though fully set forth herein.

52. Plaintiff worked under an Employment Contract, which provided that his employment with Defendant would be subject to California law.

53. California Labor Code §§ 201 and 202 requires an employer to pay its employees all wages due within the time specified by law. Labor Code § 203 provides that if an employer willfully fails to pay such wages, the employer must continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced, up to a maximum thirty days of wages.

54. Plaintiff is entitled to unpaid compensation, but to date have not received such compensation.

55. More than thirty days have passed since Plaintiff left Defendant's employment.

56. Defendant willfully failed to pay any overtime.

57. As a consequence of Defendant's willful failure to timely compensate Plaintiff for all hours worked, the Plaintiff is entitled to thirty days' wages under Labor Code § 203, together

with interest thereon and attorneys' fees and costs, including and attorneys' fees and costs for vindicating a public interest in pursuing these late pay claims, under California Code of Civil Procedure § 1021.5.

## FIFTH CAUSE OF ACTION

**FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 206, 207, 216)**

58. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

59. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed the Plaintiff. At all relevant times, upon information and belief, Defendant has gross operating revenues in excess of $500,000.

60. The FLSA requires each covered employer, such as Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

61. During employment with Defendant, within the applicable statute of limitations, Plaintiff worked in excess of forty hours per workweek. Despite the hours worked by Plaintiff, Defendant willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay him the appropriate overtime compensation for all the hours worked in excess of forty.

62. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine Plaintiff's wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

63. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

64. Plaintiff seeks damages in the amount of his respective unpaid overtime compensation, liquidated damages from three years immediately preceding the filing of this

action, plus interest and costs as allowed by law, pursuant to 29 U.S.C. §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

65. Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For payment of lost wages (past and future), lost employee benefits, and other damages according to proof in an amount to be ascertained at trial;
2. For payment of all statutory obligations and penalties as required by law;
3. Double damages;
4. For penalties, special damages, and general damages in an amount to be proven at trial;
5. For punitive damages as allowed by law;
6. For reasonable attorneys' fees;
7. For costs of suit incurred herein;
8. For reinstatement and/or other equitable relief; and
9. For interest, and
10. For such other and further relief as the court deems just and proper.

Dated: October 29, 2018.

        SCOTT WAGNER & ASSOCIATES, P.A.
        3900 W. Alameda Ave.
        St. 1200
        Burbank, CA 91505
        Telephone: (213) 377-5200
        Facsimile: (561) 653-0020

        s/Lindsey Wagner
        Lindsey Wagner, Esq.
        California Bar No. 309808
        Primary e-mail: LWagner@scottwagnerlaw.com
        Secondary e-mail: mail@scottwagnerlaw.com
        www.EmploymentRightsCalifornia.com

Lindsey Wagner
Attorney-at-Law
3900 W. Alameda Ave, Suite 1200
Burbank, CA 91505
Telephone: (213) 377-5200
Facsimile: (561) 653-0020